IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| VANESSA M. ROOSA o/b/o C.N.K.C., | CASE NO. 5:12CV02556 |
| Plaintiff, | JUDGE CHRISTOPHER A. BOYKO |
| v. | MAGISTRATE JUDGE KATHLEEN B. BURKE |
| COMMISSIONER OF SOCIAL, SECURITY ADMINISTRATION,[1] | |
| Defendant. | **REPORT AND RECOMMENDATION** |

Plaintiff Vanessa M. Roosa ("Plaintiff"), mother of C.N.K.C., a minor ("Claimant"), seeks judicial review of the final decision of Defendant, Commissioner of Social Security ("Commissioner"), denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq.  Doc. 1.   This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

**I.  Procedural History**

On April 13, 2009, Plaintiff filed an application for SSI on behalf of Claimant alleging disability based on the following impairments:  oppositional defiant/behavior disorder, separation anxiety disorder, disruptive behavior disorder, not otherwise specified, constipation,

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013. Pursuant to FED. R. CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

1

and encopresis[2]. Tr. 23. Plaintiff alleged a disability onset date of September 17, 2000. Tr. 20. The claim was denied initially on August 12, 2009, and upon reconsideration on October 28, 2009. Tr. 64-71. Plaintiff requested a hearing (Tr. 72) and, on March 17, 2011, a hearing was held before Administrative Law Judge ("ALJ") Dwight D. Wilkerson. Tr. 38-63.

In his April 18, 2011, decision (Tr.17-37), the ALJ determined that Claimant did not meet or medically equal the Listings. Tr. 24.[3] The ALJ then determined functional equivalence based on the Social Security Regulations applicable to child claimants, which provide that, for a child to "functionally equal the Listings," the child's impairment must be of listing-level severity; i.e. it must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a. The ALJ analyzed six domains of functionality and found that Claimant has no limitations in the domains of (1) acquiring and using information and (2) moving about and manipulating objects; less than marked limitations in the domains of (3) attending and completing tasks, (4) the ability to care for himself, and (5) health and physical well-being; and marked limitation in (6) interacting and relating with others. Tr. 28-33. Accordingly, the ALJ found Claimant was not disabled as his impairments do not meet, medically equal, or functionally equal the Listings. Tr. 24.

Plaintiff requested review of the ALJ's decision by the Appeals Council and, on August 8, 2012, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. Tr. 2. On October 12, 2012, Plaintiff filed the instant action on behalf of Claimant seeking review of the Commissioner's decision. Doc. 1.

---

[2] Encopresis: fetal incontinence. *See* Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 615.

[3] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

2

## II. Evidence

### A. Personal Evidence

Claimant was born in 2000 and was eleven years old at the time of the hearing. Tr. 23, 42. Claimant has never engaged in substantial gainful activity. Tr. 392.

### B. Medical Evidence

#### 1. Treatment Records

Since infancy, Claimant has had a history of functional constipation and fecal soiling. Tr. 193, 453-454, 563, 565, 567-70. He wears "pull-up" diapers and soils himself in the "pull-ups." Tr. 49, 505. Plaintiff testified that Claimant no longer feels the sensation of needing to move his bowels. Tr. 49. Claimant refused to take the medication prescribed to treat this condition. Tr. 47-48.

With respect to Claimant's mental health treatment history, on November 29, 2007, Claimant had an evaluation at the Child and Adolescent Service Center ("CASC"). Tr. 441. Claimant attended CASC upon referral from his school after he told the principal that he wanted to "kill everyone." Tr. 442. Claimant later denied any real intent to harm or kill but stated he was just angry because he was moved to a behavior adjustment class. Tr. 442. Claimant was diagnosed with oppositional defiant disorder, which is exhibited when he experiences changes to his environment. Tr. 383-384, 449. The records reflect that Claimant continued to receive counseling and treatment from CASC in 2008 and 2009 for his behavioral issues. Tr. 415-451. At one point, Claimant was prescribed Ativan and Focalin. Tr. 131, 384. His teacher stated that, when he was on his medication for four days, there was a noticeable change in his behavior at school. Tr. 131. However, Claimant refuses to take his medication. Tr. 54.

3

On January 6, 2009, Claimant presented to the emergency room following an outburst at school where Claimant tore pictures and other items from the wall.  Tr. 538.  Claimant was uncooperative during his examination.  Tr. 539.  He was assessed with adjustment disorder and defiant behavior.  Tr. 539.

### 2. School Records

Claimant attended Summit Elementary school from kindergarten through first grade.  Tr. 149, 156.  He experienced difficulty with disobedient and disruptive behavior and withdrew in September 2008.  Tr. 149, 156, 232.  Claimant next attended Hope Academy but was expelled on October 15, 2008.  Tr. 156.  Claimant later attended Gibbs Elementary but was asked to withdraw from that school.  Tr. 208.  At the time of the hearing, Claimant was enrolled at Madge Youtz Elmentary, but was only attending school part-time due to his behavior issues.  Tr. 49, 125-134.  An Individualized Education Program ("IEP") became effective in March of 2009.  Tr. 135.  The IEP provides that Claimant "benefits from (sic) a small group setting in a self-contained classroom where he can learn behavior strategies, have individual instruction, extended time for assignments/tests, and an area where he can go when he becomes frustrated."  Tr. 135.

Tonia Whiting, Intervention Specialist for Madge Youtz, completed a teacher questionnaire on May 7, 2009.  Tr. 126.  Ms. Whiting indicated that Claimant had serious or very serious problems in the domain of interacting and relating to others.[4]  Tr. 128.  In the domain of attending and completing tasks, Ms. Whiting found that Claimant did not have a serious problem.  Tr. 127.  Ms. Whiting did note, however, that Claimant "is easily distracted and has some difficulties returning to his task."  Tr. 127.  She also stated that Claimant required the

---

[4] The teacher questionnaire uses the following rating system:  1 – no problem, 2 – slight Problem, 3 – obvious problem, 4 – serious problem, 5 – very serious problem.

4

consistency and structure of a self-contained classroom with reminders to remain on task to finish his work, as well as extra time and frequent breaks.  Tr. 128.

### 3. Third Party Statements

Third party questionnaires were submitted on Claimant's behalf from Claimant's aunt, Vina Oliver; Claimant's neighbor, Shelmira Clantos, and a family friend, Taija Tate.  Tr. 367-377.  All three reported Claimant was at least moderately limited in all domains.  Tr. 367-377.

### 4. State Agency Assessments

On July 7, 2009, Claimant underwent a state consultative physical health examination by Dr. Sudheer Shirali, M.D.  Tr. 396.  Dr. Shirali noted that Claimant has had a history of constipation since the age of six months and that Claimant has had fecal impaction several times requiring the use of enemas in the emergency room.  Tr. 396.  Dr. Shirali also noted that Claimant had seen two different gastroenterologists and has been given Miralax and mineral oil, but it has not helped and he still soils his "pull-ups" almost every day.  Tr. 396.

On July 9, 2009, Claimant underwent a state consultative mental health examination by Michael J. Harvan, Ph.D.  Tr. 390.  Dr. Harvan diagnosed Claimant with separation anxiety disorder, disruptive behavior disorder NOS, chronic constipation, and assigned Claimant a GAF score of 60.[5]  Tr. 390.  Dr. Harvan opined that Claimant's cognitive and communication abilities were approximately ninety percent of what is age appropriate and that Claimant's socialization abilities were approximately seventy-five percent of what is age appropriate.  Tr. 391. Regarding Claimant's personal behavioral patterns, Dr. Harvan noted that Claimant "presents as

---

[5] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses.  *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision.  Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  *Id.*

someone whose behavioral patterns are at a level that is approximately age appropriate in the home setting and more at a level that approximates seventy-five percent of age appropriateness in the school setting.  The examiner suspects that [Claimant] has difficulty with any type of change of routine or expectations and becomes fearful and distressed in those situations."  Tr. 391.

In August and October of 2009, two state agency medical consultants, Dr. John L. Mormol, M.D. and Dr. Silvia Vasquez, M.D., reviewed the evidence of record and found that Claimant's impairments were severe but did not meet, medically equal, or functionally equal any of the Listings of impairments.  Tr. 403-408.  The medical consultants found that Claimant had either no limitation or less than marked limitation in all domains.  Tr. 404-412.

### 5. Testimonial Evidence

On March 17, 2011, Plaintiff and Claimant appeared with counsel and testified at a hearing before the ALJ.  Tr. 38.  Claimant testified first.  Tr. 42.  Claimant was mostly unresponsive.  Tr. 42-43.  Plaintiff then testified as to Claimant's physical and behavioral limitations.  Tr. 45-62.

When asked by the ALJ why Plaintiff felt her child was disabled, Plaintiff stated that Claimant has a hard time coping with others and shuts down.  Tr. 46.  She stated that he has damaged property and physically hurt people.  Tr. 46, 56-57.  From an educational standpoint, Plaintiff stated that Claimant's grades are really good but that his behavior gets in the way of his work.  Tr. 50.

Plaintiff testified that Claimant has been cut down to a two or three hour school day due to his behavior, but she doesn't want to move him to a special behavioral school because she feels a special behavioral school would focus more on the behavioral issues than his educational needs.

Tr. 49. Plaintiff testified that Claimant was prescribed Focalin for his psychological conditions at one point, but he refused to take it. Tr. 54.

Plaintiff also testified to Claimant's medical impairments, stating he has had problems with constipation since infancy and that, currently, Claimant doesn't have the sensation to have a bowel movement so he soils himself on a daily basis, requiring him to wear "pull-up" diapers. Tr. 48, 52-53. Plaintiff has had minimal treatment with gastroenterologists because he refuses medication and treatment. Tr. 58-60.

### III. Standard for Childhood Disability

The standard for evaluating a child's disability claim differs from that used for an adult. 42 U.S.C. § 1382c(a)(3)(C); *see also Miller ex rel. Devine v. Comm'r of Soc. Sec.*, 37 F. App'x 146, 147 (6th Cir. 2002). A child is considered disabled if he has a "medically determinable physical or mental impairment that results in marked and severe functional limitations and can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). To determine whether a child is disabled, the regulations prescribe a three-step sequential evaluation process. 20 C.F.R. § 416.924(a). At Step One, a child must not be engaged in "substantial gainful activity." 20 C.F.R. § 416.924(b). At Step Two, a child must suffer from a "severe impairment." 20 C.F.R. § 416.924(c). At Step Three, disability will be found if a child has an impairment, or combination of impairments, that meets, medically equals, or functionally equals an impairment listed in 20 C.F.R. § 404, Subpt. P, App'x 1; 20 C.F.R. § 416.924(d).

To determine whether a child's impairment functionally equals the Listings, the Commissioner will assess the functional limitations caused by the impairment. 20 C.F.R. §

7

416.926a(a). The Commissioner will consider how a child functions in six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for [oneself]; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). If a child's impairment results in "marked" limitations[6] in two domains, or an "extreme" limitation[7] in one domain, the impairments functionally equal the Listings and the child will be found disabled. 20 C.F.R. § 416.926a(d).

### IV. The ALJ's Decision

In his April 18, 2011, decision, the ALJ made the following findings:

1. Claimant was born in 2000. Therefore, he was a school-age child on April 13, 2009, the date application was filed, and is currently a school-age child. Tr. 23.

2. Claimant has not engaged in substantial gainful activity since April 13, 2009, the application date. Tr. 23.

3. Claimant has the following severe impairments: oppositional defiant disorder/behavior disorder, separation anxiety disorder, disruptive behavior disorder, not otherwise specified (NOS), constipation, and encopresis. Tr. 23.

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 24.

5. Claimant does not have an impairment or combination of impairments that functionally equals the Listings. Tr. 24.

---

[6] A "marked" limitation is one that "interferes seriously with [a child's] ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id*.

[7] An "extreme" limitation is one that "interferes very seriously with [a child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i). An "extreme" limitation means "more than marked." *Id*. "It is the equivalent of the functioning we would expect to find on standardized testing with scores that are at least three standard deviations below the mean." *Id*.

8

  6.  Claimant has not been disabled, as defined in the Social Security Act, since April 13, 2009, the date the application was filed. Tr. 33.

In determining functional equivalence, the ALJ individually evaluated Claimant's abilities under all six domains of functioning and made the following findings:

1. No limitation in acquiring and using information. Tr. 28.

2. Less than marked limitation in attending and completing tasks. Tr. 29.

3. Marked limitation in interacting and relating with others. Tr. 30.

4. No limitation in moving about and manipulating objects. Tr. 31.

5. No limitation in caring for yourself. Tr. 31

6. Less than marked limitation in health and physical well-being. Tr. 33.

Based on the foregoing, the ALJ determined that Claimant had not been under disability since April 13, 2009, the date the application was filed. Tr. 20. The ALJ's decision became the final decision of the Acting Commissioner when the Appeals Council confirmed it on August 8, 2012. Tr. 6.

### V. Parties' Arguments

  **A.**  **Plaintiff's Arguments**

  Plaintiff argues that the ALJ erred in finding that Claimant had a less than marked limitation in the domain of attending and completing tasks and that the ALJ's error was caused partially by a failure to follow the "whole-child" approach. Doc. 13, p.8.

### B.     Defendant's Arguments

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Claimant's impairments were not severe enough to functionally equal the Listings. Doc. 14, p. 9.

## VI. Law & Analysis

### A.  Standard of Review

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Secretary of Health and Human Services,* 889 F.2d 679, 681 (6th Cir.1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

### B.  The ALJ reasonably concluded that Claimant's impairments did not functionally equal a Listing

After determining that Claimant did not meet or medically equal any of the listed impairments, the ALJ proceeded to determine whether Claimant's impairments functionally equal the Listings.  Tr. 24.  As previously discussed, a child is considered to functionally equal the disability Listings when he has a marked limitation in at least two out of six "domains" of functioning, or an extreme limitation in just one.  20 C.F.R. § 416.926a(a); *Elam ex rel. Golay v. Comm'r*, 348 F.3d 124, 127 (6th Cir. 2003).  The ALJ found that Claimant has a marked

10

limitation in interacting and relating with others (Tr. 30) but did not find that he had a marked or extreme limitation in any of the other domains. Tr. 28-33. Accordingly, the ALJ did not find that Claimant's impairments functionally equal the severity of the disability Listings.

1. **The ALJ's finding that Claimant has less than marked limitations in the domain of attending and completing tasks is supported by substantial evidence**

Plaintiff argues that the ALJ erred in finding Plaintiff has less than marked limitations in the domain of attending and completing tasks. Doc. 13, p.9. When evaluating the attending and completing tasks domain, an ALJ considers how well a child is able to focus and maintain attention and how well he is able to begin, carry through, and finish activities, including the pace at which he performs activities and the ease of changing activities. 20 C.F.R. § 416.926a(h).

In support of Plaintiff's argument that Claimant has a marked limitation in this domain, Plaintiff points out that Claimant "requires frequent breaks, an educational assistant, extended time, and test directions read aloud as special accommodations in school." Doc. 13, p.9, Tr. 125. Plaintiff cites *Kelly v. Comm'r* for the proposition that "these problems alone support a finding that [Claimant] has a marked limitation in this domain," *Kelly v. Comm'r*, 314 Fed.Appx. 827, 832. Doc. 13, p.10. However, *Kelly* does not stand for the proposition that limitations similar to those of Claimant require a finding that Claimant has a marked limitation in attending and completing tasks.

In *Kelly*, the Sixth Circuit found only that, in that particular case, substantial evidence supported that the particular claimant's impairment in attending and completing tasks was marked. *Kelly v. Comm'r*, 314 Fed.Appx. at 832. The substantial evidence consisted of (1) the state agency consultants' opinions and (2) the teacher's reports, which all stated that the claimant had a marked impairment in attending and completing tasks. *Kelly v. Comm'r*, 314 Fed.Appx. at 832-833. In the current case, substantial evidence exists from the state agency consultants and

11

the teacher's report to support the opposite conclusion, that Claimant has a less than marked limitation in attending and completing tasks. Tr. 26, 29, 126, 405, 411.

At both the initial and reconsideration stages, the state agency consultants opined that Claimant had a less than marked limitation in attending and completing tasks. Tr. 26, 405, 411. Additionally, Ms. Tonia Whiting,[8] Intervention Specialist at Madge Youtz Elementary, reported that Claimant does not have "serious" problems in this functional area. Tr. 29, 126. Therefore, the Commissioner's decision is consistent with *Kelly* in that substantial evidence, in the form of opinions by two state agency consultants and a teacher's report, supports the ALJ's finding that Claimant has a less than marked limitation in the attending and completing tasks domain.

Furthermore, in *Kelly*, the plaintiff testified that her child had problems attending and completing tasks and she had to stay on him to do his chores. *Kelly v. Comm'r*, 314 Fed.Appx. at 832. Conversely, in the current case, Plaintiff stated that Claimant does "very well" with chores, including sweeping, mopping, doing the dishes, vacuuming, and cleaning his room when asked. Tr. 29, 208. The ALJ also found that Claimant is able to work on crafts and complete his homework. Tr. 29.

Considering all of the above, and contrary to Plaintiff's assertions, *Kelly* supports a finding that the ALJ's conclusion in this case, that Claimant has less than marked limitations in the domain of attending and completing tasks, is supported by substantial evidence. Judicial review is limited to "whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied." *Elam ex rel. Golay v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir.2003). *Castello v.*

---

[8] The ALJ stated that it was "Ms. Newman" who reported that Claimant does not have "serious" problems in this functional area (citing to Exhibit 6E, p.5). However, Ms. Newman is identified as the claims adjudicator who provided the Teacher Questionnaire to Madge Youtz Elementary School. Tr. 124. Ms. Whiting is the party who completed the form. Exhibit 6E. Tr. 132.

12

*Comm'r of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610590 (N.D. Ohio Jan. 10, 2011) *report and recommendation adopted sub nom. Castello ex rel. Castello v. Comm'r of Soc. Sec.*, 5:09 CV 2569, 2011 WL 610138 (N.D. Ohio Feb. 10, 2011).  Substantial evidence in the form of three medical opinions, one teacher questionnaire, and Claimant's reported abilities at home, support the ALJ's finding.

### 2. The ALJ followed the "whole-child" approach

Plaintiff also argues that the ALJ did not consider all of Claimant's limitations and their effects upon the attending and completing tasks domain, consistent with the "whole child" approach. Tr. 13, p.11.  Plaintiff contends that much of the same evidence that supports the ALJ's finding that Claimant possessed a marked limitation in interacting and relating with others is also applicable to Claimant's ability to attend to and complete tasks.  Tr. 13, p.11. Specifically, Plaintiff argues that the repercussions of Claimant's uncontrollable behavior include an inability to finish work and Plaintiff cites various items of evidence in the record demonstrating Claimant's multiple removals from the classroom due to behavioral issues.  Tr. 13, p12.

The whole child approach to functional equivalence requires a comparison of how the child is functioning in relationship to his or her peers. *See* Social Security Ruling 09–1p (functional equivalence to a listed impairment requires consideration of "how the child functions every day and in all settings compared to other children the same age who do not have impairments."); *Dodson ex rel. S.L.S. v. Comm'r of Soc. Sec.*, 1:11-CV-332, 2012 WL 1831844 (S.D. Ohio May 18, 2012) *report and recommendation adopted,* 1:11-CV-332, 2012 WL 2160340 (S.D. Ohio June 13, 2012).  Here, the ALJ considered how Claimant functioned at home and school before addressing the six domains of functioning.  Tr. 24-27.   The ALJ

recognized that activities and impairments can impact more than one domain and he carefully rated the severity of Claimant's limitations in each domain. Tr. 24-33. As such, the ALJ's analysis withstands scrutiny under the "whole child approach" pursuant to SSR 09-1p, 2009 WL 396031. *See Moore ex rel. J.L.M. v. Comm'r of Soc. Sec.*, 1:10-CV-834, 2011 WL 9133981 (W.D. Mich. Nov. 17, 2011) *report and recommendation adopted,* 1:10-CV-834, 2012 WL 4340820 (W.D. Mich. Sept. 20, 2012).

Plaintiff argues that the ALJ ignored large swaths of relevant evidence and that this case should be remanded for lack of substantial evidence to support a finding that Claimant did not possess marked functional limitations in two domains. Doc. 13, p.13. *Lowery v. Comm'r*, 55 Fed.Appx. 333, 340. Specifically, Plaintiff cites to evidence in the record demonstrating that Claimant must miss class instruction at times due to his behavioral problems. Doc. 13, pp. 11-12. However, as discussed in the prior section, substantial evidence in the form of three medical opinions, one teacher questionnaire, and Claimant's reported abilities at home, support the ALJ's finding. Reversal is not warranted because substantial evidence also supports an opposite conclusion, but only if substantial evidence does not support the ALJ's conclusion. *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990).

## VII. Conclusion and Recommendation

The ALJ's findings are a fair assessment of the evidence and are consistent with the consultative examiner's opinion, the state agency medical expert opinions, and Ms. Whiting's teacher questionnaire, which independently concluded that Claimant had a less than marked impairment in attending and completing tasks. The record is void of any medical expert opinion or teacher questionnaires to the contrary. The ALJ's finding that there was no functional

14

equivalence to a listed condition is supported by substantial evidence.  For all of the foregoing reasons, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

Dated:  November 14, 2013

Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).